**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KENNETH JUNHO BAE, LYDIA YUJIN BAE, JONATHAN SANG-OU BAE, NATALIE HAEJIN BAE, and TERRI SUHYUN CHUNG,

Plaintiffs,

v.

CIVIL ACTION NO.: 1:20-cv-02260

DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA,
c/o Foreign Minister Ri Son-Gwon
Ministry of Foreign Affairs
Jungsong-Dong, Central District
Pyongyang, DPRK,

Defendant.
_____________________________________/

**SECOND STATUS REPORT**

Plaintiffs, Kenneth Junho Bae, Lydia Yujin Bae, Jonathan Sang-Ou Bae, Natalie Jaejin Bae and Terri Suhyun Chung, by and through counsel, submit this status report in response to the Court's Minute Order dated July 22, 2022. Plaintiffs had previously advised the Court that they believe they have complied with the service requirements of 28 U.S.C. § 1608 on Defendant Democratic People's Republic of Korea ("North Korea") [ECF No. 27]. The Court then directed Plaintiffs via Minute Order to file a further status report by no later than August 26, 2022, informing the Court whether any case law exists to support their position that the service requirements of 28 U.S.C. § 1608 have been satisfied in this case. In response, Plaintiffs submit that they have diligently followed and complied with every step required under the statute. Even if North Korea has denied service, the case law supports this Court's decision that service has been effected by Plaintiffs' strict compliance with the statute. Plaintiffs further state:

1. This is a lawsuit filed under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, for injuries suffered by Plaintiffs because of North Korea's unlawful acts of hostage taking, torture, and other violations of the FSIA. [ECF No. 1].

2. Plaintiffs respectfully contend that they have satisfied the service requirements of 28 U.S.C. § 1608 to effect service on North Korea in that they strictly followed the steps identified in that statute as described below.

3. The service statute at issue, 28 U.S.C. § 1608, provides clear steps a litigant must follow when attempting service on a foreign state:

> (a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
>
> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

*Id.*

4. Plaintiffs must strictly comply with the service provisions of 28 U.S.C. § 1608(a) when serving a foreign government. Although technically faulty service that gives adequate notice to a foreign state may be sufficient under § 1608(b), courts have rarely excused defective service under § 1608(a). *See, e.g., Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) (citations omitted). The U.S. Court of Appeals for the District of Columbia Circuit has held that "strict adherence to the terms of 1608(a) is required." *Id.* If a party does not strictly comply with the statute, a defaulted country may vacate a judgment many years after judgment is entered. *See, e.g., id.*

5. The first two methods are unavailable because there is no "special arrangement for service" between the U.S. and North Korea, *id.* § 1608(a)(1), and North Korea is not party to an "applicable international convention on service," *id.* § 1608(a)(2). *See, e.g., Doe v. Democratic People's Republic of Korea Ministry of Foreign Affairs Jungsong-Dong*, 414 F. Supp. 3d 109, 121 (D.D.C. 2019).

6. Plaintiffs have, however, strictly complied with the requirements of 28 U.S.C. § 1608(a)(3) and (4).

7. This compliance satisfies the statute and gives authority for the Plaintiffs' suit against North Korea to proceed.

8. Plaintiffs have no control over the fact that North Korea apparently refuses to accept service from any diplomatic partners. It is important to note, however, that neither the statute nor the case law require that North Korea accept service of process.

9. Rather, the statute requires that Plaintiffs follow the statutory requirements.

10. Plaintiffs have strictly complied with the requirements of the statute and, therefore, respectfully contend that service of process on North Korea has been accomplished.

**Plaintiffs' Compliance with 28 U.S.C. § 1608(a)(3)**

11. Pursuant to 28 U.S.C. § 1608(a)(3), Plaintiffs must "send[] a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." *Id.*

12. Plaintiffs have complied with the provisions of (a)(3). On September 24, 2020, Plaintiffs filed an affidavit requesting foreign mailing. [ECF No. 8].

13. The Clerk mailed one copy of the summons and complaint, together with a translation of each into the official language of the Defendant, by FedEx, to the head of the ministry of foreign affairs, pursuant to 28 U.S.C. 1608(a)(3) on September 25, 2020 [ECF Nos. 9, 10].

14. The Clerk's Office filed a Certificate of Mailing on February 22, 2021, to certify that one copy of the summons, complaint, and notice of suit, together with a translation of each into the official language of the foreign state, was sent by registered mail, return receipt requested, to the head of the ministry of foreign affairs, pursuant to the provisions of 28 U.S.C. § 1608(a)(3). [ECF No. 20].

15. Using tracking number UH 033637957 US, Plaintiffs' counsel then tracked the service to North Korea through the U.S. Postal Service website. On February 24, 2021, the package arrived at the USPS Regional Facility at Jamaica NY International Distribution Center and departed the facility that same day. On February 25, 2021, the online tracking information showed that the package was released from U.S. Customs. Since then, the U.S. Postal Service

website has not identified the location of the package. The website indicates that the package has been "In-Transit" since being released from U.S. Customs.

16. On June 4, 2021, Plaintiffs' representative went in-person to a U.S. Postal Service Office in Pensacola, Florida, and was advised that there was no way to further track the package once the package cleared customs. Thus, Plaintiffs reasonably anticipate that the package was received in North Korea. An acknowledgment by North Korea is not a requirement of (a)(3).

17. Plaintiffs then filed a Motion for Default [ECF No. 22] and an Affidavit in Support of Request for Entry of Default [ECF No. 23] submitting that they had complied with 28 U.S.C. § 1608(a)(3), which required Plaintiffs to "send[] a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned" and requesting that this Court enter a default against the Defendant.

18. On January 26, 2022, this Court entered its Minute Order directing that the Plaintiffs move onto the fourth step and attempt service pursuant to 28 U.S.C. § 1608(a)(4).

**<u>Plaintiffs' Compliance with 28 U.S.C. § 1608(a)(4)</u>**

19. Pursuant to 28 U.S.C. § 1608(a)(4), Plaintiffs must "send[] two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to

the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted."

20. Plaintiffs have strictly complied with the requirements of (a)(4).

21. On January 10, 2022, Plaintiffs filed an Affidavit Requesting Foreign Mailing whereby they requested that the Clerk mail a copy of the summons and complaint pursuant to the provisions of 28 U.S.C. § 1608(a)(4). On January 20, 2022, the Clerk filed a Certificate of Mailing certifying that they mailed two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by FedEx, to be addressed and dispatched by the clerk of the court to the U.S. Department of State, CA/OSC/L, SA-17, 10th Floor, Washington, DC 20522-1710, ATTN: Director of Overseas Services. [ECF No. 26].

22. The U.S. Department of State advised Plaintiffs' counsel that it lacks the ability to serve North Korea through any diplomatic channels as no such diplomatic channels currently exist. That fact was addressed in Plaintiffs' Second Status Report. [ECF No. 27].

23. Pursuant to 28 U.S.C. § 1608(a)(4), Plaintiffs have taken all the steps that are required of Plaintiffs to effect service on North Korea.

**Case Law Supporting Plaintiffs' Position that the**
**Requirements of 28 U.S.C. § 1608 Have Been Satisfied**

24. Case law supports Plaintiffs' position that they have complied with 28 U.S.C. § 1608(a) such that this Court may exercise jurisdiction over North Korea.

25. In *Barry v. Islamic Republic of Iran*, the Court held that the fourth method of service under 28 U.S.C. § 1608(a)(4) was satisfied where the plaintiffs "requested that the Office of the Clerk send the necessary papers to Iran under diplomatic notes." 410 F. Supp. 3d 161, 176 (D.D.C. 2019) (internal quotation omitted).

26. The *Barry* plaintiffs, like the Plaintiffs in this case, could not comply with the first two options because "[t]here is no 'special arrangement' between the Barry Plaintiffs and Iran, nor is there 'an applicable international convention' with Iran." *Id.* (internal citations omitted). Moreover, the *Barry* plaintiffs initially attempted to effect service using the third method, but service was not successful with this method. *Id.*

27. Therefore, the *Barry* plaintiffs requested that the Office of the Clerk send the necessary papers to Iran "under diplomatic notes." This request met requirements of § 1608(a)(4) for service of process and the Court exercised personal jurisdiction over Defendant. *Id.*

28. Notably, the Court did not discuss whether the *Barry* plaintiffs took any additional steps to ensure that the U.S. Department of State hand-serve an Iranian official or whether an Iranian official accepted service. *Id.*

29. Rather, the Court found the service was effected because Plaintiffs took the steps they were required to take under the rule, that is, by "sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services." *Id.* 28 U.S.C. § 1608(a)(4).

30. The Court did not analyze or consider whether the Secretary "transmit[ted] one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." *Id.* In fact, the Court never considered what, if any, steps the U.S. Department of State took after receiving the papers or whether Iran accepted service. 410 F. Supp. 3d at 176.

31. Although the underlying docket in *Barry* indicates that the State Department served the process through diplomatic channels, the Court found that because the *Barry* plaintiffs took the steps required under the statute, service was effected, without any mention of the actions by the State Department or the fact that Iran did not acknowledge receipt of the process. *Id*.

32. The Plaintiffs respectfully submit that they have complied with 28 U.S.C. § 1608(a)(4). Satisfaction of the statute does not require acknowledgment of receipt by the terror state nor does it require proof of actual service.

33. Similarly, in *Ben-Rafael v. Islamic Republic of Iran*, the Court held that it could exercise personal jurisdiction over the Republic of Iran and its Ministry of Information and Security ("MOIS") where service of process was properly effected under 28 U.S.C. § 1608(a)(4). 540 F. Supp. 2d 39 (D.D.C. 2008).

34. There, the Court affirmed a judgment for the plaintiffs, the estate, and immediate family of an Israeli diplomat killed in the bombing of the Israeli embassy in Buenos Aires, Argentina, who brought an action under the FSIA against the Islamic Republic of Iran and MOIS. *Id.*

35. The plaintiffs-initiated service under § 1608(a)(4) by sending a package containing two copies of the pleadings (including a Farsi translation) through diplomatic channels. *Id.*

36. The Swiss foreign ministry served the documents on the Iranian Ministry of Foreign Affairs, which then returned the documents to the Swiss foreign ministry without comment. *Id.*

37. This service was proper under § 1608(a)(4) despite the refusal and return of the documents. *Id.*

38. The Court did not require the defendants to actually accept service. *Id.* The Court simply required that the plaintiffs comply with the statute, regardless of the fact that defendants refused service and returned the documents. *Id.*

39. Numerous other cases support Plaintiffs' position that the foreign defendant need not accept service for service to have been accomplished. *See, e.g.*, *Winternitz v. Syrian Arab Republic*, No. CV 17-2104 (TJK), 2022 WL 971328, at *8 (D.D.C. Mar. 31, 2022) ("Although Syria refused to accept delivery, service was still proper."); *Sotloff v. Syrian Arab Republic*, 525 F. Supp. 3d 121, 141 (D.D.C. 2021) ([Plaintiff] "started service through diplomatic channels under § 1608(a)(4) by diplomatic note forwarded by the State Department to the Foreign Interests Section of the Embassy of the Czech Republic. Although Syria refused to accept delivery, service was still proper.") (internal citations omitted); *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 371 (D.D.C. 2020) (plaintiffs accomplished service pursuant to 28 U.S.C. § 1608(a)(4) on the Islamic Republic of Iran and MOIS where plaintiffs requested service under (a)(4) and Swiss Embassy reported that the Iranian Ministry of Foreign Affairs "refused" to accept the documents); *Hamen v. Islamic Republic of Iran*, 401 F. Supp. 3d 85, 108 (D.D.C. 2019) ("The Swiss Embassy reported that the Iranian Ministry of Foreign Affairs 'refused' to accept the documents that same day. After the Islamic Republic of Iran failed to respond, the Clerk entered a default. Plaintiffs' efforts to serve Iran satisfied the requirements of § 1608(a)(4). Because Plaintiffs accomplished service under 28 U.S.C. § 1608(a)(4) on the Islamic Republic of Iran, the Court possesses personal jurisdiction over Defendant."); *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 156 (D.D.C. 2017) (service effected under 28 U.S.C. § 1608(a)(4) even though Iran refused to receive papers).

40. Other courts have similarly recognized that the receiving country need not actually accept or receive service for service to be effected. *See also Jackson v. People's Republic of China*, 550 F. Supp. 869, 873 (N.D. Ala. 1982) ("service of process was made on the People's Republic of China [pursuant to 28 U.S.C. § 1608(a)(4)] even though its embassy returned all of the documents to the Director of Special Consular Services approximately one month later").

41. Plaintiffs are aware of only one case in which the Court has held that service was not effected by strict compliance; however, that case is distinguishable. In *Haim v. Islamic Republic of Iran*, plaintiffs argued that they satisfied § 1608(a)(3) for post judgment service on defendant Islamic Republic of Iran where a service package was signed for and then immediately rejected. 902 F. Supp. 2d 71, 72 (D.D.C. 2012). There, the Court held that "defendants simply rejected the service packages; they did not open the package, nor did they take the return receipt, nor did they scrawl any message on the back of the envelope." *Id.* at 73. Thus, the Court held that the plaintiffs were required to move onto § 1608(a)(4) and attempt service through diplomatic channels. *Id.* at 74–75. *Haim v. Islamic Republic of Iran*, 902 F. Supp. 2d 71, 73 (D.D.C. 2012).

42. Here, in contrast to *Haim*, Plaintiffs have complied with every provision of § 1608(a)(3) and (4). They have sent the papers by mail to North Korea pursuant to 1608(a)(3). Although they are optimistic that the papers were actually delivered, they cannot obtain written confirmation due to North Korea's hermit status. They similarly have taken every step possible to comply with 1608(a)(4). Again, they cannot control whether North Korea has shut itself off from any and all diplomatic relations. Nor can Plaintiffs compel the U.S. Department of State to take other actions to serve North Korea.

43. Plaintiffs concede they have not found a case with precisely this same set of facts whereby a state sponsor of terror such as North Korea has completely cut itself from the outside world. Plaintiffs are also unaware of the U.S. Department of State taking the position that it completely lacks any ability to serve North Korea through any diplomatic channels.

44. Nonetheless, Plaintiffs submit that the aforementioned cases stand for the proposition that actual service is not required by the statute—rather, the statute requires that Plaintiffs strictly comply with what the statute requires them to do.

45. Because they have taken all steps required under 28 U.S.C. § 1608(a), Plaintiffs respectfully contend that they have satisfied the statute and the Court should find that it has jurisdiction.

## Conclusion

46. This Court previously recognized in *Haim v. Islamic Republic of Iran* that litigants pursuing justice under the FSIA face tremendous difficulties in their claims:

> The Court pauses to emphasize, as it has before, that the above conclusion should not be read as a lack of sympathy for plaintiffs' position. The U.S. Department of State charges a substantial fee for victims of terrorism—such as plaintiffs here—who must use the State Department to serve Iran with FSIA-related papers. In a context where successful enforcement of judgments is notoriously difficult and the prospects for recovering damages are rather bleak, the imposition of these substantial fees imposes a significant burden upon victims of terrorism. And, sadly, this is not the first time that the government has stationed itself in a position to undermine the interests of victims of terrorism in FSIA litigation. The federal government has promised victims of terrorism a forum and opportunity to seek compensation for their devastating losses, exploited this glimmer of hope to extract exorbitant fees from those victims, and then actively undermined those victims' efforts to obtain satisfaction of legal and valid judgments in order to protect its own coffers. Three years ago, this Court observed that "the great travesty in all this is that our political branches have essentially told victims of terrorism to continue their long march to justice down a path that leads to nowhere." The government now taxes those victims for their travails, as well.

902 Supp. 2d 71, 74 (D.D.C. 2012) (internal citations omitted).

47. Plaintiffs can take no further action to comply with the statute. They have done everything possible. They submit that the above cases support a finding that they have complied with 28 U.S.C. § 1608(a) and that default should be entered against North Korea.

48. If the Court does not find that North Korea has been served, or if it does not direct a different manner to serve the Defendant, then North Korea can never be served by Plaintiffs under 28 U.S.C. § 1608(a). This type of futile outcome would undermine Congress's intent when it passed a statute that allows victims of terrorism to hold certain countries accountable for acts of torture and hostage-taking.

49. Moreover, if Plaintiffs cannot proceed, this case will represent the most egregious example of this Court's concerns about the roadblocks that Americans face when attempting to seek justice under the FSIA. *See Haim*. 902 F. Supp. 2d at 74.

50. To prevent such injustice, the Plaintiffs propose the following :

a. That a default be entered against the Defendant in accordance with Plaintiffs' Motion for Entry of Default [ECF No. 22] and Affidavit in Support of Request for Entry of Default [ECF No. 23] as Plaintiffs have complied with the requirements of 28 U.S.C. Sec. 1608(a)(3) by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned. The fact that the Defendant has apparently refused to sign for those documents should not obviate the fact that the Plaintiffs have complied with the requirements of the sub-section; or

b. That the Department of State be directed to send to Sweden, through diplomatic channels, the documents in accordance with Sec. 1608(a)(4) and that that service be found to be in compliance with Sec. 1608(a)(4) as it is transmission of the papers "through diplomatic channels to the foreign state"; or

c. That the Department of State be directed to send to the Permanent Mission of North Korea to the United Nations, in care of its Permanent Representative, the documents in accordance with Sec. 1608(a)(4) and that that service be found to be in compliance with Sec. 1608(4) as it is transmission of the papers "through diplomatic channels to the foreign state" those diplomatic channels being the Permanent Representative of The Democratic People's Republic of Korea to the United Nations.

51. Absent a finding from this Court that the Defendant has been served by Plaintiffs' strict compliance with 28 U.S.C. § 1608(a), and absent a directive to finalize service pursuant to the alternatives described above, North Korea will be insulated from accountability.

52. Plaintiffs respectfully contend that even a strict construction of 28 U.S.C. § 1608(a) does not permit that result.

Respectfully submitted,

*/s/ J. Nixon Daniel, III*

J. Nixon Daniel, III
D.C. Bar No. FL0031
jnd@beggslane.com
David L. McGee - D.C. Bar No. FL0037
dlm@beggslane.com
Matthew P. Massey - D.C Bar No. 1023608
mpm@beggslane.com
Beggs & Lane, RLLP
501 Commendencia Street -
Pensacola, FL 32502

(850) 432-2451
Attorneys for Plaintiffs