UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENNETH JUNHO BAE, LYDIA YUJIN BAE, JONATHAN SANG-OU BAE, NATALIE HAEJIN BAE, and TERRI SUHYUN CHUNG,<br><br>Plaintiffs,<br><br>v.<br><br>DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA,<br><br>Defendant. | Civ. Action No. 20-2260 (EGS) |

**MEMORANDUM OPINION AND ORDER**

This action arises out of Plaintiff Kenneth Junho Bae's ("Mr. Bae") alleged arrest and imprisonment by Defendant the Democratic People's Republic of Korea ("DPRK"). Plaintiffs include Mr. Bae; his wife, Lydia Yujin Bae ("Mrs. Bae"); his children, Jonathan Sang-Ou Bae ("Jonathan") and Natalie Haejin Bae ("Natalie"); and his sister, Terri Suhyun Chung ("Ms. Chung"). Pending before the Court is Plaintiffs' Motion for Default Judgment. *See* Mot. for Default J. ("Pls.' Mot."), ECF No. 40.[1]

**I.   Background**

Plaintiffs bring this action pursuant to the Foreign Sovereign Immunities Act ("FSIA") seeking damages resulting from

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

1

the alleged imprisonment of Mr. Bae by the DPRK. *See generally* Compl., ECF No. 1.

Mr. Bae, a United States citizen, moved to China in 2006 where he established Nations Travel Consulting Corporation, Ltd. ("Nations Travel"). Pls.' Mot., ECF No. 40 at 3. Nations Travel is "a China based tour company specializing in tours of North Korea for international Christian communities across the world." *Id.* Through Nations Travel, Mr. Bae led hundreds of Christian tourists to the DPRK "to see the land, pray for the people of North Korea and worship with those people . . . ." Decl. of Kenneth Junho Bae ("Mr. Bae's Decl."), ECF No. 40-1 ¶ 3.

In November 2012, Mr. Bae began a trip with a group of tourists, and when he arrived at the North Korean border, a customs officer discovered a "portable computer hard drive" in Mr. Bae's belongings. *Id.* ¶ 6. The hard drive contained documentaries about North Korea, missionary support letters, and reports of his mission work. *See* Pls.' Mot., ECF No. 40 at 3. DPRK officials arrested Mr. Bae "for bringing in materials deemed harmful to the North Korean regime." Compl., ECF No. 1 ¶ 23. Specifically, Plaintiffs allege that Mr. Bae was charged with:

> a. Attempting to overthrow the government of the DPRK by bringing Christians to pray and worship[];
> b. Attempting to start a prayer center inside the DPRK;

2

  c. Dishonoring the leader's name by telling the tourists that it was the DPRK that started the Korean War and the President Kim Il-Sung was responsible for starting the war that cost more than 3 million lives;
  d. Setting up bases in China for the purpose of toppling the DPRK;
  e. Bringing people into the DPRK to pray while disguising them as tourists;
  f. Encouraging the citizens of the DPRK to bring down the government;
  g. Conducting a malignant smear campaign against the government of the DPRK and its supreme leader; and
  h. Being a religious terrorist who wanted to bring down the government of the DPRK.

Mr. Bae Decl., ECF No. 40-1 ¶ 6.

 After his arrest, Mr. Bae alleges that he was kept in a holding facility for five months where he was interrogated and subjected to mental and physical torture. *Id.* ¶¶ 8-9. After being tried and convicted of the charges against him, Mr. Bae was sentenced to fifteen years at a DPRK labor camp. *Id.* ¶ 10. Plaintiffs allege that Mr. Bae was held for a total of 735 days until he "was released by virtue of a special pardon issued by Kim Jung Un" on November 8, 2014. *Id.* ¶ 18.

 Plaintiffs filed this lawsuit on August 17, 2020, alleging that Mr. Bae's arrest and imprisonment caused them emotional, psychological, and economic harm. *See* Compl., ECF No. 1 ¶¶ 50–103. After several unsuccessful attempts to effect service upon the DPRK between 2020 and 2023, the Court directed Plaintiffs to attempt to effect service of process pursuant to alternative

3

methods, including: "(1) service via mailing upon the Permanent Representative of the Democratic People's Republic of Korea to the United Nations in New York . . . and (2) service by publication upon the Defendant via X (formerly known as Twitter)[.]" Minute Order (Dec. 4, 2023). On January 19, 2024, Plaintiffs filed an Affidavit certifying that they complied with the alternative methods of service. *See* Aff. of Service by Alternative Methods, ECF No. 34.

On March 12, 2024, after the DPRK failed to file an Answer or otherwise respond to the Complaint, Plaintiffs filed a Motion for Entry of Default, ECF No. 36. On March 19, 2024, the Clerk of the Court entered default as to the DPRK, ECF No. 37, and on October 30, 2024, Plaintiffs filed the pending Motion for Default Judgment. *See* Pls.' Mot., ECF No. 40.

## II.  Legal Standard

Federal Rule of Civil Procedure 55(a) provides for entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). While there are "strong policies favoring the resolution of genuine disputes on their merits," default judgments are available "when the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 835-36 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v.*

*Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Before entering a default judgment, the Court must confirm that it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. *See Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 56 (D.D.C. 2018) (citing *Friends Christian High Sch. v. Geneva Fin. Consultants*, 321 F.R.D. 20, 22 (D.D.C. 20170; *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)).

To secure default judgment under FSIA, a plaintiff must "establish[] his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). "FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide, requiring only that it be 'satisfactory to the court.'" *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1046 (D.C. Cir. 2014) (quoting 28 U.S.C. § 1608(e)).

**III. Analysis**

    **A. Subject-Matter Jurisdiction**

Under the FSIA, the Court has subject matter jurisdiction "over suits against a foreign state 'without regard to amount in controversy' if the case is a nonjury civil action for in personam relief and the foreign state is not entitled to immunity under 28 U.S.C. §§ 1605-1607." *Friends of Mayanot Inst.*, 313 F. Supp. 3d at 56 (citing 28 U.S.C. § 1330(a)).

5

The first three requirements are easily satisfied here. First, this action is a nonjury civil action—Plaintiffs did not request a jury trial, and "claims under the FSIA are not eligible for resolution by a jury." *Croesus EMTR Master Fund L.P. v. Federative Republic of Braz.*, 212 F. Supp. 2d 30, 40 (D.D.C. 2002) (citing 28 U.S.C. § 1330(a)). Second, the DPRK is, of course, the foreign state itself. And third, this is an action in personam because the action is against the Defendant as a legal entity, not property.

The final question—whether the DPRK is entitled to sovereign immunity—requires more discussion. "Under the FSIA's conception of the doctrine of sovereign immunity, a foreign state is 'presumptively immune' from suit." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 210 (D.D.C. 2012) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). However, FSIA contains exceptions to sovereign immunity, including the "state-sponsored terrorism" exception, which Plaintiffs argue applies here. *See* Pls.' Mot., ECF No. 40 at 22 (citing 28 U.S. C. § 1605A). This exception allows a court to hear claims where, as here, plaintiffs allege that an act of torture or hostage taking by the foreign state caused them personal injury, and (1) "the foreign state was designated as a state sponsor of terrorism at the time the act . . . or was so designated as a result of such act, and . . . remains so

designated when the claim is filed"; (2) the claimant was a national at the time the act occurred; and (3) if "the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim[.]" 28 U.S.C. § 1605A(a)(2)(A)(i)-(iii).

Here, the DPRK was not designated as a state sponsor of terrorism at the time of Mr. Bae's detention, and the Court concludes that there is insufficient evidence to establish that the DPRK was designated a state sponsor of terrorism "as a result of" Mr. Bae's detention. First, while the DPRK was declared a state sponsor of terrorism in 1988, the State Department revoked that designation in 2008. *See* Notice, Determination Pursuant to Section 6(j) of the Export Administration Act of 1979; North Korea, 53 Fed. Reg. 3477-01 (Feb. 5, 1988); Notice, Rescission of Determination Regarding North Korea, 73 Fed. Reg. 63540-01 (Oct. 24, 2008). It was not until November 2017, three years after Mr. Bae was released, that the DPRK was re-designated as a state sponsor of terrorism. *See* Notice, Democratic People's Republic of Korea (DPRK) Designation as a State Sponsor of Terrorism (SST), 82 Fed. Reg. 56100-01 (Nov. 27, 2017).

Plaintiffs argue that Mr. Bae's detention was "[o]ne of the heinous, illegitimate acts" that led to the State Department re-

7

listing the DPRK as a state sponsor of terrorism in 2017. Pls.' Mot., ECF No. 40 at 24. However, the only evidence Plaintiffs submitted to link the DPRK's designation to Mr. Bae's detention were affidavits submitted by Mr. Bae's son and sister detailing their lobbying efforts. *See* Decl. of Johnathan Sang-Ou Bae ("Jonathan Decl."), ECF No. 40-2 ¶ 10; Decl. of Terri Suhyun Chung ("Ms. Chung Decl."), ECF No. 40-5 ¶¶ 7-16. While Jonathan and Ms. Chung aver that they did media engagements, met with public figures and North Korea policy experts, and wrote letters to the President and other United States leaders, the affidavits assert that each of these acts were in an effort to get Mr. Bae returned to the United States. *See* Jonathan Decl., ECF No. 40-2 ¶ 10; Ms. Chung Decl., ECF No. 40-5 ¶¶ 7-16. There is no evidence to support the conclusion that these acts influenced the State Department's decision to re-list the DPRK as a state sponsor of terrorism in 2017, more than three years after Mr. Bae was released.

Plaintiffs urge the Court to follow the holding in *Warmbier v. Democratic People's Republic of Korea*, 356 F. Supp. 3d 30, 45 (D.D.C. 2018), where the court held that the DPRK's re-designation as a state sponsor of terrorism was, at least in part, a result of the plaintiffs' son's death, such that it stripped the DPRK of sovereign immunity. *Id.* Specifically, the court focused on the evidence that the decedent's family

"recounted [his] story to 'to various government officials'—including members of Congress, State Department and Executive Branch officials—'in support of re-adding North Korea to the list of state sponsors of terrorism.'" *Id.* (citation omitted). Additionally, not only did members of Congress specifically reference the decedent's tragic death in a letter to the Secretary of State urging the relisting of the DPRK, but the decedent was specifically mentioned during President Trump's announcement that the DPRK was being re-listed as a state sponsor of terrorism. *Id.* at 45. While there is evidence that the DPRK's re-designation was due to alleged detentions and torture, there is not enough evidence to conclude that it resulted from Mr. Bae's detention to strip the DPRK of sovereign immunity. *See Vera v. Republic of Cuba*, 867 F.3d 310 (2d Cir. 2017) (finding expert's opinion that "Cuba's eventual designation was based, at least in part, on extrajudicial killings and tortures" insufficient to establish specific link to plaintiff's father's death).

Accordingly, the Court concludes that Plaintiffs have failed to establish that a statutory exception to sovereign immunity under the FSIA applies, and thus, the Court lacks subject matter jurisdiction.

## IV. Conclusion & Order

For the foregoing reasons, it is hereby

9

**ORDERED** that Plaintiffs' Motion for Default Judgment, ECF No. 40 is **DENIED**.

This is a final appealable Order.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            August 15, 2015**